[Cite as *State v. Wheatley*, 2011-Ohio-1997.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 1-10-75

    v.

KEVIN D. WHEATLEY,               **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2010 0253

**Judgment Affirmed**

Date of Decision: April 25, 2011

APPEARANCES:

    *Rebecca S. Newman* for Appellant

    *Jana E. Emerick* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Kevin D. Wheatley ("Wheatley"), appeals the October 27, 2010 judgment of the Common Pleas Court of Allen County, Ohio, finding him guilty of one count of breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree, and sentencing him to twelve months in prison and 747 days in prison for violating his post-release control, which were ordered to be served consecutively to one another.

{¶2} The facts relevant to this appeal are as follows. On the weekend of June 5-7, 2009, Church's United Pantry ("C.U.P."), located in Lima, Allen County, Ohio, which was closed all weekend, was broken into. The intruders gained entry by breaking a 1' x 5' window. Officers were called to the scene, where they discovered broken glass from the window on the outside and inside of the building. Upon further inspection, they found blood on some of the broken glass, the curtains, and on a refrigerator/freezer inside the business. Suzanne Plumb, president of the board of C.U.P., was contacted and came to C.U.P., where she discovered that a large amount of frozen meat had been stolen from the freezer.

{¶3} Officers collected some of the glass fragments that had blood on them, which were later tested for DNA. A fingerprint was also found on a piece of glass at the scene and collected as evidence. Initially, the Lima Police Department had

no suspects. However, in December of 2009, Jeremy Perrine ("Perrine") was arrested on an unrelated charge and his fingerprints were taken and placed in a fingerprint database called AFIS. At that time, the police identified the fingerprints taken from the broken glass at C.U.P. as those of Perrine's. Eventually, the police also discovered that the blood at the scene belonged to Perrine.

{¶4} Detective Steve Stechschulte later located Perrine and questioned him about the break-in at C.U.P. Perrine admitted to breaking into C.U.P. and told Det. Stechschulte that he was with a man named Kevin whom he met at the Mary Alice House. Perrine further described Kevin, and Det. Stechschulte was able to determine, based upon his prior knowledge of Wheatley, that Perrine was with Wheatley at the time of the break-in.

{¶5} On August 3, 2010, Wheatley was arrested on a warrant that was issued for the breaking and entering of C.U.P. The following day, Det. Stechschulte interviewed Wheatley, who was still in custody. During this interview, Wheatley admitted to being the one who broke the window at C.U.P. and that he told Perrine, who was much thinner, to go through the window and get some food because he could not climb through such a small opening himself. According to Wheatley, Perrine climbed through the window and took some food from C.U.P. but that he, personally, never went inside. Wheatley further stated

that he and Perrine were both heavily intoxicated at the time. This interview was recorded on DVD.

{¶6} On September 16, 2010, Wheatley and Perrine were jointly indicted on one count of breaking and entering, a felony of the fifth degree, in violation of R.C. 2911.13(A). Wheatley entered a plea of not guilty at his arraignment, and his case proceeded to a jury trial on October 26, 2010. The State presented the testimony of three witnesses: Officer Johnny Elchert, who was one of the officers who responded to C.U.P. after the break-in; Suzanne Plumb; and Det. Stechschulte. The State also presented four photographs taken of C.U.P. by Off. Elchert when he responded to the break-in and a copy of a portion of the DVD recording of Wheatley's interview. Wheatley presented no evidence, and the jury returned a verdict of guilty.

{¶7} The trial court immediately proceeded to sentencing. The court noted that Wheatley had an extensive criminal record, including prior felonies. The court also noted that Wheatley had a prior conviction in 2001 for sexual battery, that he had been imprisoned for that offense, and that he was on post-release control for that offense at the time he committed the breaking and entering offense at C.U.P. The trial court then sentenced him to prison for twelve months for breaking and entering and for 747 days for violating post-release control, which it

ordered to be served consecutively to the breaking and entering sentence. This appeal followed, and Wheatley now asserts one assignment of error.

**THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF DEFENDANT/APPELLANT'S CONSTITUTIONAL RIGHTS THEREBY DENYING HIM A FAIR TRIAL.**

{¶8} In his assignment of error, Wheatley asserts that his trial counsel should have filed a motion to suppress his statement to Det. Stechschulte. Wheatley further contends that if the motion to suppress would have been granted, he would not have been convicted because his statement was the only evidence of his involvement that the State presented. Thus, he maintains that his constitutional right to competent counsel was violated.

{¶9} Initially we note that attorneys licensed by the State of Ohio are presumed to provide competent representation. *State v. Hoffman* (1998), 129 Ohio App.3d 403, 407, 717 N.E.2d 1149. An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In reviewing such a claim, courts are to afford a high level of deference to the performance of trial counsel. *Id.* at 142, 538 N.E.2d 373. Also, in order to show that a defendant has been prejudiced by counsel's deficient performance, the

defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial or in his legal proceedings would have been different. *Id*. at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the result. *Id*. at 142, 538 N.E.2d 373.

{¶10} The United States Supreme Court has held that the "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305, cited in *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52, 2000-Ohio-448. There must also be a reasonable probability that the motion will be successful. See *State v. Robinson* (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077*; State v. Ligon*, 3rd Dist. No. 4-2000-25, 2001-Ohio-2231. Therefore, this Court's determination of whether counsel for Wheatley was ineffective relies upon whether there was a reasonable probability that a motion to suppress in this case would have been successful.

{¶11} The seminal case of *Miranda v. Arizona* requires that "[a] suspect in police custody 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'"

*State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, 853 N.E.2d 279, ¶ 6, quoting *Miranda v. Arizona* (1966), 384 U.S. 436, 479.  In order for a suspect's waiver of his *Miranda* rights to be valid, the waiver must be knowingly, intelligently, and voluntarily made.  *Miranda*, 384 U.S. at 444.  The determination of whether a suspect validly waived his *Miranda* rights is made based on the totality of the circumstances.  *State v. Gumm*, 73 Ohio St.3d 413, 429, 1995-Ohio-24, 653 N.E.2d 253.  "The totality of the circumstances includes 'the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'"  *State v. Campbell*, 90 Ohio St.3d 320, 332, 2000-Ohio-183, 738 N.E.2d 1178, quoting *State v. Edwards* (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus.

{¶12} Prior to addressing the merits of this assignment of error, we note that the record before this Court contains only a portion of the DVD recording of Wheatley's statement.  This portion was shown at the trial, admitted as State's Exhibit 5, and only contains the portion of Wheatley's interview with Det. Stechschulte regarding the break-in at C.U.P.  Exhibit 5 begins with Det. Stechschulte reading Wheatley his *Miranda* rights and ends while Wheatley is in the middle of a sentence.  Thus, it is obvious that this interview contained more information than is before this Court.  In fact, Det. Stechschulte testified that the

actual interview was longer than what was shown on Exhibit 5 but that this exhibit contained all of his interview as it related to the C.U.P. break-in. Given this state of the record, we can only address whether this portion of the DVD reveals whether a suppression motion would have had a reasonable probability of being successful. We find that it does not.

{¶13} Neither party disputes that Wheatley was in custody at the time of his interview or that Det. Stechschulte read him the *Miranda* warnings. Det. Stechschulte asked Wheatley if he understood those rights, Wheatley said that he did, and Det. Stechschulte read the waiver portion of his *Miranda* rights form, and asked Wheatley if he wanted to talk. Wheatley told the detective that he did not know what the detective wanted him to do, and Det. Stechschulte told Wheatley that it was his choice and that if he did not feel like talking to the detective he could tell Det. Stechschulte to "pound sand." Det. Stechschulte, who clearly had prior experiences with Wheatley, told him that if he wanted to talk, all Det. Stechschulte wanted was for Wheatley not to lie to him and further told him that he was not trying to railroad Wheatley and had never done so in the past. Wheatley then proceeded to admit to participating in the break-in at C.U.P.

{¶14} Wheatley, who was forty-one at the time of the interview, did not appear to be of low intelligence, was able to speak coherently, and as noted by the trial court and as evidenced by his criminal record that was filed in discovery, had

prior criminal experience, having been convicted of various offenses, including felonies. The entire length of the portion of the interview before this Court is three minutes and forty-eight seconds. The interview was not intense, and Wheatley was not mistreated and does not appear to have been physically deprived.

{¶15} Although Wheatley contends that the interview shows Det. Stechschulte telling him that he could arrange for Wheatley to get out of jail if he tells the detective that he was involved in the break-in and that he could have filed additional charges against Wheatley, these statements are taken out of context.

{¶16} In explaining to Wheatley that he is not trying to "railroad" him, Det. Stechschulte references a prior incident where he could have "railroaded" him if he wanted to but that was never his desire. Further, the detective says that there were two additional charges that he could have brought against Wheatley if he was trying to "railroad" him but that he did not charge him with those offenses and had no intention of charging him with them now.

{¶17} As to the assertion that Det. Stechschulte told Wheatley that he could get him out of jail if he confessed to breaking and entering, the detective's statements about Wheatley being released were not mentioned until *after* Wheatley confessed to breaking the window at C.U.P. and they were not promises. Rather, Wheatley stated that he did not understand why he was in jail but Perrine was not even though Perrine also confessed. Det. Stechschulte told Wheatley that

he got a warrant for him on the charge because he did not know where Wheatley was and wanted to talk to him. Wheatley once again told Det. Stechschulte about his involvement in the break-in, and the detective then explained that he had no problem with bond being established for Wheatley and releasing him and that he would "go down and talk to them" because he did not have any other reason to hold Wheatley, but he never promised Wheatley that he would arrange to have Wheatley released from jail if he confessed. Thus, when considering the entire context of these statements and when they occurred in the interview, we do not find that Wheatley was threatened or promised anything in exchange for his statement.

{¶18} In light of the totality of the circumstances of the portion of the interview before us, Wheatley's waiver of his *Miranda* rights were made voluntarily and knowingly. Thus, there was not a reasonable probability that a motion to suppress would have been successful, and we do not find that Wheatley's trial counsel was ineffective for failing to file a motion to suppress. Accordingly, the assignment of error is overruled.

{¶19} For these reasons, the judgment of the Common Pleas Court of Allen County, Ohio, is affirmed.

*Judgment Affirmed*

**ROGERS, P.J., and WILLAMOWSKI, J., concur.**
**/jlr**

-10-