[Cite as *State v. Goodwin*, 2013-Ohio-4591.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99254

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TONY GOODWIN

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED
## IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-550777

**BEFORE:** Celebrezze, J., Stewart, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 17, 2013

**ATTORNEY FOR APPELLANT**

John T. Castele
614 West Superior Avenue
Suite 1310
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Holly Welsh
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Tony Goodwin, appeals from the judgment of the common pleas court denying his motion to suppress. He further appeals from his subsequent conviction and sentence for discharging a firearm on or near prohibited premises, which was rendered after a jury trial. After a careful review of the record and relevant case law, we affirm in part, reverse in part, and remand for further proceedings.

## I. Factual and Procedural History

{¶2} On March 18, 2011, Dewayne Rhym, the victim in this case, was found lying on the ground near a storefront on Broadway Avenue in the city of Cleveland, having been shot in the back. At approximately 6:30 p.m., paramedics responded and transported Rhym to MetroHealth Medical Center, where he was later pronounced dead.

{¶3} The following day, appellant, then a 17-year-old juvenile, went to the Cuyahoga County juvenile detention center with his mother and his attorney and attempted to turn himself in for his involvement in Rhym's death. The rationale for turning himself in so quickly was that he was remorseful and feared for his own safety. However, the police, having no probable cause to arrest appellant, were unable to admit him into the detention center. Instead, appellant was taken to police headquarters to speak with Cleveland Homicide Unit detectives.

{¶4} Detective Tom Armelli of the Cleveland Homicide Unit led the investigation in this matter. Once appellant was delivered to police headquarters, Detective Armelli spoke with appellant's attorney, who stated that his client did not yet wish to make a

formal statement. Thereafter, Detective Armelli contacted the juvenile detention center to see if they would hold appellant. Detective Armelli was informed that appellant could not be held until charges were brought against him. As a result, Detective Armelli began driving appellant home. During that drive home, Detective Armelli called appellant's mother and explained to her that his only option was to return appellant to her. Shortly thereafter, Detective Armelli received a call from appellant's attorney who "expressed that [appellant] was depressed, remorseful, possibly suicidal, and afraid of retribution on the street," and therefore "it was imperative that he not be returned home." Once Detective Armelli explained that he had no options without sufficient probable cause to hold appellant, he permitted appellant to use his cell phone to briefly speak with his attorney. After those conversations, Detective Armelli was advised by appellant's attorney that appellant would make a short statement.

{¶5} At that time, Detective Armelli drove appellant back to the Homicide Unit, advised him of his *Miranda* rights, and took a video-recorded and written statement from appellant. In his statement, appellant implicated himself in the shooting death of Rhym.

{¶6} Subsequently, appellant was charged as a juvenile with aggravated murder, murder, and discharge of a firearm on or near a protected premises, with one- and three-year firearm specifications attached to each count. Appellant was bound over to the Cuyahoga County Grand Jury and charged as an adult.

{¶7} Prior to trial, appellant's counsel filed a motion to suppress the statement given to Detective Armelli, arguing that appellant did not receive effective assistance of

counsel at the time the statement was made and that his statement was not voluntarily made due to appellant's age and low I.Q. After conducting a thorough suppression hearing, the trial court denied appellant's motion to suppress.

{¶8} On August 27, 2012, the matter proceeded to a jury trial. At trial, Allen Smith, the director of the Boys and Girls Club located on Broadway Avenue, testified that he was in the lobby of the Boys and Girls Club when he witnessed a young male running down the street with a weapon. Smith testified that he observed the male fire the weapon as he was running at a fast pace.

{¶9} Denise Jones testified that she was on a RTA bus on her way home from work when she saw two individuals run past the bus window. She testified that the first person who passed her window had a look of fear on his face and was running as fast as he could. Seconds later, a second male ran past her window. Jones testified that she stood up to see what was happening and then heard what sounded like a firecracker. Thereafter, she witnessed the first individual collapse.

{¶10} Appellant testified that on March 18, 2011, he got off the RTA bus on Broadway when he saw Rhym. Appellant stated that ever since his brother had been shot and killed a year earlier, he kept a gun on his person for protection. Approximately three years earlier, appellant and Rhym had an altercation that resulted in Rhym punching appellant and breaking his jaw. Appellant testified that he had not planned on seeing Rhym that day, but when he did, he immediately became upset and told Rhym he wanted to fight. According to appellant, Rhym laughed at the threat, but once he realized

appellant was serious, he took off running. Appellant pursued, but when he could not catch up, he pulled out his gun and fired a shot. Appellant testified that he only fired the shot in an attempt to scare Rhym and get him to stop running. According to appellant, Rhym stumbled a little and then slowed down. Appellant caught up to him and punched him numerous times before Rhym managed to run away. Appellant testified that he was not trying to kill Rhym or even shoot him, but that he just wanted Rhym to stop running so that they could fight.

{¶11} At the conclusion of the trial, appellant was acquitted of the aggravated murder and murder charges, but found guilty of discharging a firearm on or near a premises along with a three-year firearm specification. On August 29, 2012, the trial court sentenced him to a three-year term of incarceration for the firearm specification, to be served consecutively and prior to a six-year sentence for the underlying felony of the first degree, for an aggregate sentence of nine years.

## II. Law and Analysis

### A. Insufficient Jury Verdict Form

{¶12} In his first assignment of error, appellant argues that because the verdict form provided to the jury contained incorrect statutory language, the trial court erred in entering a judgment against him for a felony of the first degree.

{¶13} Appellant did not object to the verdict form at the trial court level, and thus we review for plain error. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest

miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶14} Appellant was charged with discharging a firearm on or near a protected premises in violation of R.C. 2923.162(A)(3), which states in pertinent part:

(A) No person shall do any of the following:

* * *

(3) Discharge a firearm upon or over a public road or highway.
The penalty section of R.C. 2923.162 states as follows:

(C) Whoever violates this section is guilty of discharge of a firearm on or near prohibited premises. * * * A violation of division (A)(3) of this section shall be punished as follows:

(1) Except as otherwise provided in division (C)(2), (3), or (4) of this section, a violation of division (A)(3) of this section is a misdemeanor of the first degree.

(2) Except as otherwise provided in division (C)(3) or (4) of this section, if the violation created a substantial risk of physical harm to any person or caused serious physical harm to property, a violation of division (A)(3) of this section is a felony of the third degree.

(3) Except as otherwise provided in division (C)(4) of this section, if the violation caused physical harm to any person, a violation of division (A)(3) of this section is a felony of the second degree.

(4) If the violation caused serious physical harm to any person, a violation of division (A)(3) of this section is a felony of the first degree.

{¶15} In the case at hand, the indictment charged appellant with a violation of R.C. 2923.162 and furthermore alleged that in committing the offense, appellant did cause serious physical harm to Dewayne Rhym in violation of R.C. 2923.162(C)(4), thereby

elevating the offense to a first-degree felony. However, the record reflects that the trial court did not utilize the express statutory language of R.C. 2923.162(C)(4) when providing its instructions to the jury. Rather, the trial court provided an inherently "hybrid" instruction, which combined the "created a substantial risk" language contained in R.C. 2923.162(C)(2) with the "caused serious physical harm" language found in R.C. 2923.162(C)(4). We note that the difference between an individual "creating a substantial risk of physical harm" and actually "causing serious physical harm" is substantial.

{¶16} Specifically, the trial court provided the following instruction to the jury:

> Now, in the event and only in the event your verdict is guilty of discharge of firearm on or near a prohibited premises as charged in Count 3, then you must go further and decide beyond a reasonable doubt whether the defendant did or did not *cause a substantial risk of serious physical harm* to Dewayne Rhym.

(Emphasis added.)

{¶17} Furthermore, the verdict form returned by the jury contained the same language. The verdict form read as follows:

> We, the Jury in this case, having found the Defendant, Tony Goodwin, guilty of Discharge of Firearm On or Near Prohibited Premises, further find and specify that the Defendant DID *cause a substantial risk of serious physical harm* to Dewayne Rhym.

(Emphasis added.)

{¶18} Based on the language used by the trial court during its instructions to the jury and the jury's finding that appellant created "a substantial risk of physical harm," appellant asserts that the trial court erred in convicting him of a first-degree felony where

there was no finding by the jury that appellant did, in fact, cause serious physical harm, as required by R.C. 2923.162(C)(4). We reluctantly agree, finding plain error.

{¶19} It is clear from the record that the trial court gave an inaccurate recitation of R.C. 2923.162(C)(4) when it provided its instructions to the jury. It is equally clear that the verdict forms provided to the jury contained the same incorrect language. As a result, there was simply no finding by the jury, serving as the trier of fact, that appellant "caused serious physical harm" while committing the underlying offense. Accordingly, the element necessary for elevating appellant's underlying offense to a felony of the first degree was not met. We recognize the weight of our conclusion given the tragic circumstances of this case. However, as an appellate court, we are unable to retroactively make findings on behalf of the jury based on how we believe the jury would have concluded had they been provided with a proper jury instruction and verdict form.

{¶20} Notwithstanding, we find that the jury verdict form was sufficient to enhance appellant's conviction to a felony of the third degree pursuant to R.C. 2923.162(C)(2). Here, the jury determined that appellant created a substantial risk of serious physical harm. Such a finding encompasses the "created a substantial risk of physical harm to any person" language contained in R.C. 2923.162(C)(2). Accordingly, appellant's conviction for a felony of the first degree is vacated, and the matter is remanded for an entry of conviction consistent with this opinion and resentencing.

{¶21} Appellant's first assignment of error is sustained.

**B. Manifest Weight**

{¶22} In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. As stated, R.C. 2923.162(A)(3) prohibits any person from discharging a firearm on or over a public road or highway. In challenging the manifest weight of the evidence supporting his conviction, appellant asserts that "the shooting did not take place upon or over a public road or highway, but adjacent to a public road or highway, i.e., on the sidewalk."

{¶23} When reviewing a claim challenging the manifest weight of the evidence, this court, after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversal on manifest weight grounds is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id*. In addition, this court must remain mindful that the weight to be given the evidence and the credibility of the witnesses are matters left primarily to the jury. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶24} After a careful review of the record and relevant testimony, we find that appellant's conviction for discharging a firearm on or near a prohibited premises was not against the manifest weight of the evidence. At trial, the state presented testimony that appellant was seen running down Broadway Avenue just moments before the alleged shots were fired. Additionally, Detective Armelli testified that he discovered a shell

casing in the street. Based on these facts, appellant's conviction was supported by sufficient evidence, and we are unable to determine that the jury clearly lost its way and created a manifest miscarriage of justice.

{¶25} Appellant's second assignment of error is overruled.

## C. Motion to Suppress

{¶26} In his third assignment of error, appellant argues that the trial court erred in denying his motion to suppress his statement to the police. Within this assignment of error, appellant raises several arguments relating to the waiver of his *Miranda* rights and the effectiveness of his counsel prior to the trial proceedings.

### 1. Standard of Review

{¶27} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850, 739 N.E.2d 1249 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

### 2. Ineffective Assistance of Counsel

{¶28} Initially, appellant argues that his statements to the officers should be suppressed based on his counsel's ineffective assistance at the time he provided the officers with a statement.

{¶29} The United States Supreme Court has repeatedly held that "the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments." *Mapp v. Ohio*, 367 U.S. 643, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Thus, there is not sufficient legal authority to permit a trial court to apply the exclusionary rule to a claim based solely on the Sixth Amendment guarantee of the effective assistance of counsel in the context of a pretrial meeting with police officers. *State v. Radford*, 1st Dist. Hamilton No. C-980998, 1999 Ohio App. LEXIS 5792 (Dec. 3, 1999).

{¶30} Nevertheless, we agree with the trial court's determination that defense counsel's conduct during the investigation stages of this matter did not fall below an objective standard of reasonable performance. The record reflects that the decision to speak to the police was made by appellant and his mother. Furthermore, the testimony presented at the suppression hearing overwhelmingly demonstrates that defense counsel frequently advised appellant of the consequences associated with making a statement to the police and that he only agreed to allow appellant to speak with Detective Armelli based on appellant's adamant desire to make a statement for "his own needs." Under these circumstances, we are unable to conclude that defense counsel rendered ineffective assistance.

### 3. Waiver of *Miranda* Rights

**{¶31}** Next, appellant argues that his statements to the police should have been suppressed due to his low I.Q.; that is, that his intellectual limitations prevented him from making a knowing and intelligent waiver of his *Miranda* rights.

### i. *Miranda* **Standard**

**{¶32}** A suspect in police custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Absent such a warning, a suspect's statements during a custodial interrogation are subject to suppression. *In re J.C.*, 173 Ohio App.3d 405, 2007-Ohio-5763, 878 N.E.2d 719, ¶ 14 (2d Dist.). However, if the suspect voluntarily, knowingly, and intelligently waived his *Miranda* rights before the interrogation, then suppression is inappropriate. *State v. Wheatley*, 3d Dist. Allen No. 1-10-75, 2011-Ohio-1997, ¶ 11, citing *Miranda* at 444.

**{¶33}** The United States Supreme Court has stated that consideration of *Miranda* waivers must focus on two separate factors: (1) the voluntary nature of the defendant's confession and (2) the defendant's ability to comprehend and waive his rights. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). The burden to prove the existence of a valid waiver rests on the state and requires proof by a preponderance of the evidence. *State v. Broom*, 40 Ohio St.3d 277, 285, 533 N.E.2d 682 (1988).

{¶34} *Miranda* is an embodiment of the long-standing principle that police officers in the United States are precluded from improperly coercing criminal suspects into giving up confessions. *See Spano v. New York*, 360 U.S. 315, 320-321, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) ("The abhorrence of society to the use of involuntary confessions does not turn alone on their inherent untrustworthiness. It also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminal themselves"); *Bram v. United States*, 168 U.S. 532, 542-543, 18 S.Ct. 183, 42 L.Ed. 568 (1897) ("[For a] confession * * * to be admissible, * * * [it] must not be extracted by any sorts of threats or violence, nor obtained by any direct or implied promises, however slight, nor by exertion of any improper influence"). Accordingly, the rationale for *Miranda*'s protections is that they are necessary to "reduce the likelihood that suspects would fall victim to constitutionally impermissible practices of police interrogation." *New York v. Quarles*, 467 U.S. 649, 656, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). Based on this underlying principle, when courts have assessed the validity of a suspect's *Miranda* waiver, they have generally focused on the interrogation's circumstances "from the perspective of the police." *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir.2009). Such a focus is especially appropriate in the context of Fifth Amendment protections since Fifth Amendment jurisprudence often revolves around objective determinations, as opposed to the subjective beliefs of the suspect.

{¶35} With these principles in mind, we now turn to appellant's purported waiver of his *Miranda* rights.

### ii. Voluntariness of Appellant's Waiver

{¶36} Coercive police activity during the course of an interrogation is a necessary predicate for finding that a suspect's *Miranda* waiver was involuntary. *State v. Kirk*, 3d Dist. Crawford No. 3-12-09, 2013-Ohio-1941.    Here, appellant does not claim that there was any coercive police conduct, and the testimony presented at the suppression hearing confirms that appellant's waiver was indeed voluntary.   Nevertheless, he argues that his statement should be suppressed inasmuch as it was not made knowingly or intelligently, as a result of his low I.Q. and the advice of counsel that fell below the minimum standard of effective assistance.

### iii. Knowing and Intelligent Nature of Waiver

{¶37} Since appellant's waiver was voluntary, we must consider whether it was also knowing and intelligent. The question of whether a waiver was knowing and intelligent is a factual issue that must be determined based on the totality of the circumstances. *State v. Mulkey*, 98 Ohio App.3d 773, 781, 649 N.E.2d 897 (10th Dist.1994). The totality approach requires inquiry into all the circumstances surrounding the interrogation.  *Id*.   This includes evaluation of age, experience, education, background, intelligence, and whether the offender has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of

waiving those rights. *State v. Lynn*, 7th Dist. Belmont No. 11 BE 18, 2011-Ohio-6404, ¶ 13.

**{¶38}** Thus, an individual's low intellect does not necessarily render him or her incapable of waiving *Miranda* rights. *See State v. Jenkins*, 15 Ohio St.3d 164, 233, 473 N.E.2d 264 (1984); *State v. Hall*, 48 Ohio St.2d 325, 333, 358 N.E.2d 590 (1976). Rather, a person's low intellect is but one of many factors under the totality of circumstances that a court must consider in assessing the voluntariness of a *Miranda* waiver or confession. *State v. Frazier*, 115 Ohio St.3d 139, 154, 2007-Ohio-5048, 873 N.E.2d 1263.

**{¶39}** Based on our review of the record, we find that appellant's waiver of his *Miranda* rights was knowingly and intelligently given. At the suppression hearing, appellant testified that prior to making a statement, Detective Armelli read him his *Miranda* rights and instructed him to read the text of those rights from a large chart on the wall of the interrogation room. After a brief conversation with his attorney over the phone, appellant stated that he understood the rights he was waiving and wished to make a statement at that time. Aside from appellant's own admission, the totality of the circumstances supports our conclusion that the waiver was knowingly and intelligently made. Here, appellant displayed no outward signs that he was of diminished mental capacity at the time he made his statement. Furthermore, appellant's testimony at the suppression hearing demonstrated that he had at least a rudimentary understanding of the

criminal process at the time he made his statement, in part, due to his observations of the criminal proceedings involving the shooting death of his older brother.

**{¶40}** In our view, there is no doubt that appellant understood the seriousness of the situation and the possible consequences he faced at the time he made his statement. In fact, appellant admitted that he felt he needed to turn himself in because "it was the right thing to do" and he felt "remorseful" because someone was shot. This testimony demonstrates that appellant had the capacity to understand the criminal nature of his actions, which suggests that he also had the capacity to understand and appreciate the consequences of speaking to the police about his criminal conduct.

**{¶41}** In light of the above circumstances, the trial court did not err in denying appellant's motion to suppress.

### iv. Failure to Obtain Expert Evaluation

**{¶42}** Within this assignment of error, appellant further contends that defense counsel was ineffective for failing to request that an independent expert evaluate his capacity to provide a knowing and intelligent waiver of his *Miranda* rights. Appellant argues that had defense counsel requested an expert evaluation of his capacity to waive his *Miranda* rights, the outcome of his suppression hearing would have been different. After a careful review of the suppression hearing transcript, we are unable to determine that the outcome of the hearing would have been different had an expert evaluation been obtained. Accordingly, appellant cannot establish prejudice.

**{¶43}** Appellant's third assignment of error is overruled.

## D. Jury Polling

**{¶44}** In his fourth assignment of error, appellant argues that the trial court erred in entering a judgment of conviction when the jury affirmatively stated at the time they were polled that they found him not guilty.

**{¶45}** An appellate court reviews a court's acceptance of a jury's verdict under an abuse of discretion standard. *State v. Brumback*, 109 Ohio App.3d 65, 73, 671 N.E.2d 1064 (9th Dist.1996). We will not disturb the trial court's ruling unless it has exhibited an "unreasonable, arbitrary, or unconscionable" attitude. *State v. Lowe*, 69 Ohio St.3d 527, 532, 634 N.E.2d 616 (1994).

**{¶46}** Crim.R. 31(D) provides that, on the motion of a party or on a trial court's own initiative, the court is to poll a jury when a verdict is returned. R.C. 2945.77 also provides for the polling of the jury after the verdict to determine whether it is unanimous. In the event a juror declares that a verdict is not his own, the court may direct further deliberations or discharge the jury, per Crim.R. 31(D). R.C. 2945.77 requires the jury to deliberate further if a juror contradicts his own verdict.

**{¶47}** In this case, the trial court asked the jury at the conclusion of its verdict if it was, in fact, their verdict, to which the jury responded "yes." Thereafter, the state expressed its wish to poll the jury, and the following statements were made:

> BAILIFF: Juror number one, is this your verdict?
> JUROR ONE: Not guilty.
> BAILIFF: Juror number two?
> JUROR TWO: Not guilty.
> BAILIFF: Juror number three?
> JUROR THREE: Not guilty.

BAILIFF: Juror number four?
JUROR FOUR: Not guilty.
BAILIFF: Juror number five?
JUROR FIVE: Not guilty.
BAILIFF: Juror number six?
JUROR SIX: Not guilty.
BAILIFF: Juror number seven?
JUROR SEVEN: Not guilty.
BAILIFF: Juror number eight?
JUROR EIGHT: Not guilty.
BAILIFF: Juror number nine?
JUROR NINE: Yes.
BAILIFF: Juror number ten?
JUROR TEN: Yes.
BAILIFF: Juror number eleven?
JUROR ELEVEN: Not guilty.
BAILIFF: Juror number twelve?
JUROR TWELVE: Not guilty.
THE COURT: Thank you, ladies and gentleman.

{¶48} In light of the above statements, appellant asserts that "the polling of the jury conflicted with the written jury verdict and, therefore, he ought not to have been convicted of the charge of discharging a firearm on or near a prohibited premises." While we recognize appellant's argument, we are convinced that the jury's verdict in this matter was unanimous despite their apparent confusion during the polling process. Here, it is clear from the record that the state requested the polling based on appellant's acquittal on the counts of murder and aggravated murder. Thus, it is equally clear from the record that the jurors' statements of "not guilty" when polled related to their determinations on the murder and aggravated murder counts. We emphasize that it would have been preferable for the trial court to inquire further to clarify any confusion stemming from the jurors' responses in light of the jury finding appellant guilty of

discharging a firearm on or near a prohibited premises. However, we cannot conclude that the trial court's acceptance of the jury's verdict was arbitrary, unreasonable, or unconscionable. *See Lowe*, 69 Ohio St.3d at 532.

{¶49} Appellant's fourth assignment of error is overruled.

{¶50} Based on the foregoing, we affirm in part, reverse in part, and remand for the purposes of reducing appellant's conviction to a felony of the third degree and for resentencing.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, A.J., and
SEAN C. GALLAGHER, J., CONCUR