[Cite as *State v. Lawrence*, 2016-Ohio-2768.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,              CASE NO. 12-15-11

      v.

JUSTIN DEAN LAWRENCE,            O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Putnam County Common Pleas Court
Trial Court No. 2015CR00031

**Judgment Affirmed**

**Date of Decision:  May 2, 2016**


**APPEARANCES:**

    *Andrew D. Knueve* **for Appellant**

**ROGERS, J.**

{¶1} Defendant-Appellant, Justin Lawrence, appeals the judgment of the Court of Common Pleas of Putnam County convicting him of one count of unlawful sexual contact with a minor with a specification and sentencing him to 60 months in prison. On appeal, Lawrence argues that the trial court erred by denying his motion to suppress statements amounting to a confession. Lawrence also argues that he was denied effective assistance of counsel because his trial counsel failed to present either an opening or closing statement and failed to call a potential witness. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On June 8, 2015, the Putnam County Grand Jury returned a one count indictment against Lawrence charging him with one count of unlawful sexual conduct with a minor with a specification in violation of R.C. 2907.04(A) and 2907.04(B)(3), a felony of the third degree. Lawrence entered a plea of not guilty to the charge.

{¶3} On August 27, 2015, Lawrence filed a motion to suppress all statements Lawrence made to the police and children service representatives arguing that he was not given warnings required under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before being interviewed by the police.

{¶4} A hearing on Lawrence's motion to suppress was held on September 25, 2015, where the following testimony was presented.

{¶5} Chief Dennis Cupp of the Leipsic Police Department was the first witness to testify. Chief Cupp testified that he served as the chief of police for the Leipsic Police Department. He stated that he became involved in the investigation of a victim, I.B., who was a minor claiming to have been raped by Lawrence.

{¶6} As part of his investigation, Chief Cupp testified that he asked Lawrence to volunteer himself for an interview. He explained that Lawrence agreed to meet with him at the Putnam County Sheriff's Office on May 21, 2015. Chief Cupp added that Lawrence appeared on his own voluntarily and drove himself to the sheriff's office. Chief Cupp stated that he interviewed Lawrence and that the interview was recorded. Chief Cupp later identified a transcript of the interview, which was admitted into evidence.

{¶7} Chief Cupp testified that he began the interview by reading Lawrence his *Miranda* rights verbatim. He explained that he also gave Lawrence a written recitation of the *Miranda* rights and asked Lawrence to read the document and initial next to each right to indicate that Lawrence had read and understood his rights. A copy of the written recitation was later identified by Chief Cupp and admitted into evidence. The interview continued, and, ultimately, Lawrence admitted to engaging in consensual sex with I.B.

{¶8} Chief Cupp stated that Lawrence never exercised or attempted to exercise his right to remain silent or his right to counsel.

{¶9} On cross-examination, Chief Cupp testified that the interview room was about ten feet by ten feet and had a desk with two chairs set up around the desk. Lawrence sat in the chair to the left of the desk and Chief Cupp sat at the chair in front of the desk. He explained that he was not blocking Lawrence's pathway to the door.

{¶10} Chief Cupp stated that he was wearing his normal uniform of the day, which included his service pistol. He admitted that neither he nor the written recitation informed Lawrence that Lawrence was free to leave the interview at any time. At the conclusion of Chief Cupp's testimony, the State rested.

{¶11} Lawrence testified on his own behalf. Lawrence admitted that he signed the written recitation of the *Miranda* rights. He also indicated that he was informed of his right to remain silent, but said that no one told him that he had the right to get up and walk out of the room. Lawrence added that he felt like he was not free to leave. Lawrence admitted that he understood the written recitation of the *Miranda* rights when he signed the document.

{¶12} On cross-examination, Lawrence stated that he drove himself to the sheriff's office on the day of the interview. He testified that no one accompanied him to the sheriff's office. Lawrence admitted that he had the choice of whether to

come in and talk with Chief Cupp. He indicated that the reason he decided to talk with Chief Cupp was so he could tell his side of the story. Again, Lawrence stated that he was read his *Miranda* rights and understood the rights he waived by speaking with Chief Cupp. Lawrence was asked several times if he wanted to tell Chief Cupp his story that day and he responded by stating yes or something indicating the same.

{¶13} Although Lawrence admitted to Chief Cupp that he had engaged in sexual intercourse with I.B., Lawrence stated that he felt pressured into making the confession. He explained, "That I did it, because otherwise I didn't think I was going to - - I didn't think I was ever going to leave, thought I was going to be arrested and put in jail anyway, so * * *." Sept. 25, 2015 Hrg., p. 31. At the conclusion of Lawrence's testimony, the defense rested.

{¶14} At the conclusion of all the testimony, the court took the matter under advisement.

{¶15} On October 7, 2015, the trial court denied Lawrence's motion to suppress. In its entry, the court made the following findings of fact:

> 1.  An investigation was initiated against [Lawrence] concerning alleged sexual conduct with a minor.
>
> 2.  [Lawrence] was contacted and agreed to meet Leipsic Police Chief Dennis Cupp for questioning at the Putnam County Sheriff's Department on May 21, 2015. The officer was in uniform at the time of questioning. The circumstances of questioning were custodial in nature.

3.    [Lawrence] voluntarily drove to the Putnam County Sheriff's Department and entered a room for questioning with recording devices present.

4.    [Lawrence] was read Miranda rights as follows:

5.    'You have the right to remain silent.

6.    Anything you say can and will be used against you in court.

7.    You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

8.    If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

9.    If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.'

5.    [Lawrence] signed a written waiver of Miranda rights after he had read the above written summary and initialed all the rights in question.  He then agreed to questioning.  [Lawrence] never asked that questioning cease nor did he ask for counsel to be present. [Lawrence] had a full understanding of his rights under Miranda and gave voluntary statements in response to questioning by the officer.

6.    [Lawrence] was arrested upon the completion of questioning.

(Docket No. 63, p. 1-2).  Based on its findings, the trial court concluded that Lawrence appeared voluntarily and that he was fully advised of his *Miranda* rights.  Therefore, the court denied Lawrence's motion to suppress.

{¶16} The case proceeded to a jury trial on October 19, 2015.  At the conclusion of the State's opening statement, Lawrence's trial counsel waived

opening statement and reserved opening until the defense's case in chief, if required. During the State's case in chief, several witnesses testified, including I.B. During the State's case in chief, Lawrence's trial counsel made several objections, some of which were successful, and cross-examined the State's two key witnesses, I.B. and Chief Cupp.

{¶17} At the conclusion of the State's case in chief, Lawrence's trial counsel moved for acquittal pursuant to Crim.R. 29, which was denied.

{¶18} Before presenting Lawrence's case in chief, his trial counsel stated that Lawrence wished to testify. Further, Lawrence's trial counsel indicated that he had advised Lawrence to not testify. After engaging in a colloquy with Lawrence about his constitutional rights regarding testifying, the court ordered a brief recess so that Lawrence could speak with his trial counsel about testifying. Upon reconvening, Lawrence's trial counsel indicated that Lawrence would be testifying and reminded the court that he had advised Lawrence to not testify.

{¶19} Lawrence's trial counsel waived opening statements and called Lawrence, who testified on his own behalf. Lawrence generally testified about how he was innocent and that he lied to Chief Cupp when he made the admissions during the interview.

{¶20} During cross-examination, Lawrence claimed to know a witness that would testify that he was alone on the day that the alleged sexual conduct

occurred. Lawrence could not remember the witness's full name, but remembered that her first name was Valerie and that she was friends with his wife. He explained that Valerie was not testifying in the trial because she did not receive a subpoena. He also admitted several times that I.B.'s testimony lined up with several aspects of his statements made during the interview. At the conclusion of Lawrence's testimony, the defense rested.

{¶21} At that time, Lawrence's trial counsel renewed his Crim.R. 29 motion, which was denied.

{¶22} After the State presented its closing statement, Lawrence's trial counsel waived closing statements, "other than asking the jurors to abide by their oath that they were given at the beginning by Your Honor * * *." Trial Tr., p. 251.

{¶23} The jury found Lawrence guilty, and the court ordered a sentencing hearing for a later date. Ultimately, Lawrence was sentenced to 60 months in prison, a mandatory five year period of post-release control, and was classified as a Tier II sex offender.

{¶24} Lawrence filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN OVERRULING LAWRENCE'S MOTION TO SUPPRESS.**

***Assignment of Error No. II***

**LAWRENCE'S ATTORNEY WAS INEFFECTIVE FOR FAILING TO MAKE ANY OPENING OR CLOSING ARGUMENTS AND FOR FAILING TO CALL A POTENTIAL EYEWITNESS.**

*Assignment of Error No. I*

**{¶25}** In his first assignment of error, Lawrence argues that the trial court erred by denying his motion to suppress. Specifically, Lawrence argues that his statements should be suppressed because he was never informed of his right to leave the interview. We disagree.

**{¶26}** "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist. 2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

**{¶27}** Under the United States Supreme Court's ruling in *Miranda*, a person in police custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. "Absent such a warning, a suspect's statements during a custodial interrogation are subject to suppression." *State v. Kirk*, 3d Dist. Crawford No. 3-12-09, 2013-Ohio-1941, ¶ 24, citing *In re J.C.*, 173 Ohio App.3d 405, 2007-Ohio-5763, ¶ 14 (2d Dist.). "However, if the suspect voluntarily, knowingly, and intelligently waived his *Miranda* rights before the interrogation, then suppression is inappropriate." *Id.*, citing *State v. Wheatley*, 3d Dist. Allen No. 1-10-75, 2011-Ohio-1997, ¶ 11, citing *Miranda* at 444. In this case, Lawrence only challenges the voluntariness of his waiver, and, therefore, we will only focus on this aspect of his waiver.

**{¶28}** In assessing whether a person has voluntarily waived *Miranda* rights, an appellate court assesses the situation by looking at the totality of the circumstances. *Id.* at ¶ 25, citing *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995). "Relevant circumstances in our inquiry include 'age, experience, education, background, and intelligence' of the suspect, as well as 'whether he has the capacity to understand warnings given him, the nature of his Fifth Amendment

rights, and the consequences of waiving those rights.' " *Id.*, quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). The State has the burden to prove, by a preponderance of the evidence, that the waiver was valid. *Id.*, citing *State v. Broom*, 40 Ohio St.3d 277, 285 (1988).

{¶29} An essential requirement for a finding that a *Miranda* waiver was not voluntary is some evidence of coercive police conduct. *Id.* at ¶ 28, citing *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("The voluntariness of a waiver * * * has always depended on the absence of police overreaching * * *."). Assuming, arguendo, that the interrogation was custodial in nature and *Miranda* warnings were required, we find that no such coercion exists.[1]

{¶30} At the hearing on Lawrence's motion to suppress, both Chief Cupp and Lawrence testified that Lawrence volunteered himself to an interview and drove himself to the sheriff's office. Moreover, Lawrence explained that he wanted to go to the sheriff's office to tell Chief Cupp his side of the story. Chief Cupp stated that at the beginning of the interview he read Lawrence his *Miranda* rights. Lawrence confirmed that he understood those rights. Chief Cupp then gave Lawrence a written recitation of the *Miranda* rights and asked Lawrence to read the document to himself and initial next to each right to indicate that he

---

[1] We note our disagreement with the trial court's determinations that the interrogation was custodial in nature and, therefore, *Miranda* warnings were required. However, given that this issue was neither raised by either party nor is it dispositive in the case, we decline to address this issue further.

understood each right. Again, Lawrence testified that he understood his rights. No testimony was presented that Lawrence ever invoked his right to an attorney or his right to remain silent. Chief Cupp testified that he knew Lawrence before the interview given their positions with volunteer fire departments. Further, Chief Cupp explained that the interview room was set up in a way where Lawrence could have gotten up and walked out of the room without having to cross paths with him. Although Lawrence argues that he was never told that he was free to leave at any time, Chief Cupp testified that he informed Lawrence that Lawrence did not have to answer any questions. Although whether a person has been told that he or she was free to leave may be a factor in determining whether the waiver was made voluntarily, *State v. Noles*, 6th Dist. Lucas No. L-12-1310, 2013-Ohio-4088, ¶ 30, an interrogating officer need not advise a suspect that he or she was free to leave as it is not required under *Miranda*.

{¶31} The record also fails to show any evidence of inherently coercive tactics such as physical abuse, threats, deprivation of food, medical treatment, or sleep. *See State v. Getsy*, 84 Ohio St.3d 180, 189 (1998).

{¶32} Given the above, competent and credible evidence was presented to support the trial court's finding that Lawrence's waiver of his *Miranda* rights was made voluntarily. Therefore, the trial court did not err by denying Lawrence's motion to suppress.

{¶33} Accordingly, we overrule Lawrence's first assignment of error.

*Assignment of Error No. II*

{¶34} In his second assignment of error, Lawrence argues that he was denied effective assistance of trial counsel. Specifically, Lawrence argues that his trial counsel was ineffective because trial counsel failed to present either an opening or closing statement and failed to call an eye witness that would have supported Lawrence's position. We disagree.

{¶35} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Id.* at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy*, 63 Ohio St.3d 424, 433 (1992), *superseded by constitutional amendment on other grounds as recognized by State v. Smith*, 80 Ohio St.3d 89, 103 (1997).

{¶36} Further, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Barnett*, 3d

Dist. Logan No. 8-12-09, 2013-Ohio-2496, ¶ 45. "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.' " *Id*., quoting *Smith v. Murray*, 477 U.S. 527, 535, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

**{¶37}** First, Lawrence argues that trial counsel was ineffective for failing to make an opening and closing statement during the guilt phase of the trial to establish that Lawrence had lied to Chief Cupp regarding his confession. It is widely established that the decision to make an opening or closing statement is considered a tactical decision or trial strategy, which does not rise to the level of ineffective assistance. *See Bradley* at 144; *State v. Magers*, 3d Dist. Seneca No. 13-03-48, 2004-Ohio-4013, ¶ 18, citing *State v. Williams*, 74 Ohio App.3d 686, 700 (8th Dist.1991), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the preferred trial strategy might be to make an opening and closing statement, we cannot say that Lawrence's trial counsel's decision to waive opening and closing argument resulted in ineffective assistance of counsel. *See Magers* at ¶ 18. There are several possible reasons why Lawrence's trial counsel did not present an opening statement, including not knowing whether Lawrence was going to testify and whether Lawrence was unpredictable. *See Id.*

{¶38} Although Lawrence's trial counsel waived opening and closing arguments, the record reflects that he zealously attempted to establish that Lawrence's confession was false and that Lawrence was innocent. Lawrence's trial counsel cross-examined both State key witnesses, I.B. and Chief Cupp, and made several objections during the State's case in chief, some of which were successful.

{¶39} Second, Lawrence argues that his trial counsel's decision not to call Valerie as a defense witness resulted in ineffective assistance. " 'Generally, a counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.' " *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 213, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490 (2001). The only instance of Valerie in the record occurred when Lawrence used that name at trial. Lawrence claimed that Valerie, one of his wife's friends, would testify that he was not with I.B. when the alleged sexual conduct occurred. Even if Valerie, a person whose full name is still unknown to this court, would have testified as such, Lawrence has failed to show that his trial counsel was aware of this witness before trial began.

{¶40} Even assuming, arguendo, that failing to call Valerie as a witness fell below an objective standard of reasonableness, Lawrence has failed to show how the outcome of trial would have been different. Given the testimony of I.B. and

Chief Cupp, as well as the videotaped recording of Lawrence's confession, there is not "a probability sufficient to undermine confidence in the outcome of the trial." *Waddy*, 63 Ohio St.3d at 433. Further, as stated above, Lawrence's trial counsel cross-examined the State's two key witnesses and made several objections, some of which were successful. Therefore, given the totality of the circumstances, we cannot find that Lawrence's trial counsel's actions rose to a level of ineffective assistance of counsel.

{¶41} Accordingly, we overrule Lawrence's second assignment of error.

{¶42} Having found no error prejudicial to the appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**