[Cite as *State v. Lane*, 2022-Ohio-3775.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 1-21-33

    v.

DAYSHA N. LANE,                      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2019 0399

**Judgment Affirmed**

Date of Decision: October 24, 2022

APPEARANCES:

    *Gregory Scott Robey* for Appellant

    *Jana E. Emerick* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Daysha N. Lane, appeals the August 5, 2021 judgment of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On November 14, 2019, the Allen County Grand Jury indicted Lane on two counts: Count One of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e), a first-degree felony, and Count Two of possession of heroin in violation of R.C. 2925.11(A), (C)(6)(b), a fourth-degree felony. Each count also contained a firearm specification pursuant to R.C. 2941.141(A), a specification for forfeiture of a gun in a drug case pursuant to R.C. 2941.1417(A), and a specification for forfeiture of money in a drug case in violation of R.C. 2941.1417(A). Lane appeared for arraignment on November 22, 2019 and pleaded not guilty to the counts and specifications in the indictment. The trial court also appointed Lane trial counsel.

{¶3} A jury trial was held on June 7-8, 2021. On June 8, 2021, the jury found Lane guilty as charged in the indictment.

{¶4} Lane's sentencing hearing was held on July 21, 2021. At the hearing, the trial court determined that Count One, possession of cocaine, and Count Two, possession of heroin, did not merge for sentencing. However, the trial court found that the firearm specifications merged, and the State elected to have the trial court sentence Lane on the firearm specification associated with Count One. Thereafter,

-2-

the trial court sentenced Lane to a mandatory term of six years in prison for Count and an additional one-year-mandatory prison term for the firearm specification associated with that charge. With respect to Count Two, the trial court sentenced Lane to a nonmandatory term of 12 months. The trial court ordered the sentence for Count Two to be served concurrently to the sentence for Count One making for an aggregate prison term of 7 to 10 years. The trial court filed its judgment entry of sentence on the August 5, 2021.

{¶5} On August 11, 2021, Lane filed her notice of appeal. She raises nine assignments of error. For ease of discussion, we will address several of her assignments of error together and out of order.

### Assignment of Error No. I

**The State failed to present sufficient evidence to support criminal convictions of Appellant, resulting in substantive and procedural due process violations.**

### Assignment of Error No. II

**The convictions of Appellant are against the manifest weight of the evidence presented, and said convictions must be vacated.**

### Assignment of Error No. IV

**The trial court erred when it denied Appellant's Rule 29 Motion, with regard to Counts One, and the firearm specifications.**

{¶6} We elect to address Lane's first, second, and fourth assignments of error together as they concern related issues. In Lane's first assignment of error, she

argues her convictions for each count and the related firearm specifications are not supported by sufficient evidence. Specifically, in her first assignment of error, Lane contends that the State did not present sufficient evidence that she possessed the firearms and drugs giving rise to the offenses. In her second assignment of error, Lane argues that her convictions are against the manifest weight of the evidence. In her fourth assignment of error, Lane alleges that the trial court erred by denying her Crim.R. 29 motion with respect to Count One and the firearm specifications.

*Standards for Sufficiency-of-the-Evidence
and Manifest-Weight Review*

{¶7} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Accordingly, we address each legal concept individually.

{¶8} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In

deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶9} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weight[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Lane's Offenses*

**{¶10}** We first review the sufficiency of the evidence supporting Lane's convictions. Lane was found guilty of possession of cocaine and possession of heroin in violation of R.C. 2925.11(A), (C)(4)(e) and R.C. 2925.11(A), (C)(6)(b), respectively. Lane was also found guilty of the firearm specifications associated with both counts.

**{¶11}** Possession of drugs under R.C. 2925.11(A) provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶12}** The firearm specification attached to each of the possession offenses pursuant to R.C. 2941.141(A) requires that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.141(A).

**{¶13}** On appeal, Lane argues only that there is insufficient evidence that she possessed the drugs and firearm. Because possession is the only element Lane challenges on appeal, our review will be limited to determining whether sufficient evidence was presented that Lane possessed the cocaine, heroin, and firearm. *Compare State v. Watts*, 3d Dist. Hancock No. 5-12-34, 2016-Ohio-257, ¶ 43.

**{¶14}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance

through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 45, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶15} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26 and 13-13-04, 2013-Ohio-4975, ¶ 25, citing *State v. Cooper*, 3d Dist. Marion No. 9-06-49, 2007-Ohio-4937, ¶ 25, citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976) and *State v. Haynes*, 25 Ohio St.2d 264 (1971). "'A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.*, citing *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus and *Wolery* at 329. "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *Hankerson* at 91. "Finally, the State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Id.*, citing *State v. Stewart*, 3d Dist. Seneca No. 13-08-18, 2009-Ohio-3411, ¶ 51. *See also Jenks*, 61 Ohio St.3d at 272-273. "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are

evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 19, citing *State v. Norman*, 10th Dist. Franklin No. 03AP-298, 2003-Ohio-7038, ¶ 31 and *State v. Baker*, 10th Dist. Franklin No. 02AP-627, 2003-Ohio-633, ¶ 23. "Although a defendant's mere proximity to drugs is in itself insufficient to establish constructive possession, proximity to the drugs may constitute some evidence of constructive possession." *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 20, citing *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 40. "Therefore, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession." *Id.*, citing *State v. Riggs*, 4th Dist. Washington No. 98CA39, 1999 WL 727952, *5 (Sept. 13, 1999).

*Sufficiency of the Evidence & Crim.R. 29*

{¶16} Lane's arguments challenging the sufficiency of the evidence of her convictions are predicated upon the argument that the cocaine, heroin, and firearm were not in her possession. Reviewing the evidence in a light most favorable to the State, we conclude the jury could have rationally inferred beyond a reasonable doubt Lane's constructive possession of the cocaine, the heroin, and a firearm.

{¶17} At trial, the State presented evidence that members of the West Central Ohio Crime Task Force executed a controlled buy at 949 Leland Avenue, Lima,

Ohio on October 2, 2019. The target of the controlled buy was Deontray Forrest. Based on the evidence obtained during the controlled buy, law enforcement obtained a search warrant for the residence, which was executed that same day.

{¶18} When law enforcement officers executed the search warrant, the only individuals present at 949 Leland Avenue were Lane, her minor child, and her two juvenile siblings. (June 7-8, 2021 Tr. at 187). When inquired by Investigator Dena Lauck, Lane provided Investigator Lauck with her personal information and stated that she and her young child were the sole residents of 949 Leland Avenue. (*Id.* at 187-188). Lane also informed Investigator Lauck that she was pregnant with Forrest's child. (*Id.* at 188).

{¶19} When Investigator Lauck entered the house, she observed suspected narcotics on the kitchen counter, which was located near the entrance to the residence. (*Id.* at 188-189); (State's Exs. 8, 9, 37, 38). Forensic testing identified the suspected narcotics as heroin and cocaine. (State's Ex. 72); (June 7-8, 2021 Tr. at 426-428). Law enforcement officers also located $90 cash on Lane's person, $29 cash in the console of a car registered in Lane's name, and $22 cash in a wallet found in the vehicle. (State's Exs. 11-14); (June 7-8, 2021 Tr. at 196-198).

{¶20} In addition, investigators located a much larger quantity of suspected drugs, as well as drug paraphernalia, in an end table in the living room area of Lane's residence. (State's Exs. 15, 16, 19, 61, 62, 63, 64); (June 7-8, 2021 Tr. at 386-387).

The drugs were contained inside a red children's Easter basket, which investigators believed belonged to Lane's child. (State's Exs. 61, 62, 63); (June 7-8, 2021 Tr. at 386-387). Also located in the basket with the drugs were nail polish and nail care products. (State's Ex. 63); (June 7-8, 2021 Tr. at 370-373). The end table was not locked and was accessible to any person in the house. (June 7-8, 2021 Tr. at 389). Forensic examination of the suspected drugs identified the substance as approximately 80 grams of cocaine. (State's Ex. 72); (June 7-8, 2021 Tr. at 426-428, 436). Sergeant Michael A Hanes, Jr., a member of the West Central Ohio Crime Task Force, testified this quantity of cocaine was more consistent with quantities of cocaine at the trafficking level rather than a "user level." (June 7-8, 2021 Tr. at 389-390).

{¶21} Law enforcement's search of the property also uncovered $5,000.00 cash located inside a bag on the top of the refrigerator. (State's Exs. 14, 53, 54, 55, 56); (June 7-8, 2021 Tr. at 376-382). The currency was secured into five bundles each containing $1,000.00. (June 7-8, 2021 Tr. at 358-359, 381-382); (State's Exs. 14, 56). Furthermore, law enforcement officers identified several of the bills located in the $5,000.00 bundle as matching money used during the controlled buy executed at the residence earlier in the day. (June 7-8, 2021 Tr. at 217-218); (State's Exs. 21.4, 22).

{¶22} Law enforcement officers also located a functional firearm with a live round of ammunition inside the chamber. (State's Exs. 17, 57, 58); (June 7-8, 2021 Tr. at 200-202, 359-360). The firearm was located between the mattresses in a bedroom just off the living room area, where the end table with the large amount of cocaine was located. (June 7-8, 2021 Tr. at 291, 391-392); (State's Exs. 17, 35, 57). According to Sergeant Hanes, in his experience, it is common for investigators to uncover firearms in between mattresses, and it is also common to locate firearms and drugs in close proximity to one another because drug traffickers often use the firearms to protect their drug business or the proceeds thereof. (June 7-8, 2021 Tr. at 393, 395).

{¶23} Investigator Lauck conceded that the search warrant listed Forrest as the target of the investigation at 949 Leland Avenue. (*Id.* at 305-306). However, in her experience, investigating one suspect often leads law enforcement to other targets. (*Id.* at 338). According to Investigator Lauck, although Forrest was initially the target of the investigation, the investigation into Forrest uncovered evidence that Lane was part of Forrest's drug-dealing circle. (*Id.* at 338-339).

{¶24} The State also introduced text message communications between Lane and an individual identified as "Yazzzzieee Yazzz" and text message communications between Lane and Forrest. (State's Exs. 4, 5). In State's Exhibit 4, an extraction report of text messages between Lane and "Yazzzzieee Yazzz," the

two repeatedly communicate about selling drugs and make multiple references to drug users arriving at Lane's residence to purchase drugs. (State's Ex. 4). Throughout the conversation, the pair recurrently use drug slang to discuss the drugs that they are selling to drug users and the proceeds that they receive in exchange. (*Id.*). At one point in the conversation, Lane refers to herself as a "real live trap queen" which Investigator Lauck translated to mean the "queen of * * * selling drugs." (*Id.*); (June 7-8, 2021 Tr. at 238-239).

{¶25} In State's Exhibit 5, an extraction report of the text messages between Lane and Forrest, the pair make repeated references to people coming to Lane's house for the purpose of purchasing drugs. (State's Ex. 5) Lane also asks Forrest to help her "flip * * *taxes," which Investigator Lauck stated means using a tax refund to purchase drugs and selling the drugs for a profit. (*Id.*); (June 7-8, 2021 Tr. at 250-251). Lane also made several references to "my" 38-caliber weapon, which matched the weapon and ammunition located during the execution of the search warrant. (State's Ex. 5); (June 7-8, 2021 Tr. at 265, 270). In the text message communications, Lane also told Forrest that she would enlist the help of a female friend to transport drugs with Forrest. (State's Ex. 5); (June 7-8, 2021 Tr. at 265-260). Lane also references Forrest paying her for "these licks," which Investigator Lauck interpreted to be a reference to Forrest paying Lane for selling drugs. (State's Ex. 5); (June 7-8, 2021 Tr. at 274-276).

**{¶26}** The State also introduced several recorded jail calls that Lane made to Forrest. (June 7-8, 2021 Tr. at 294); (State's Ex. 23). In the first call, the pair discusses what items law enforcement recovered from the residence. (June 7-8, 2021 Tr. at 295-296). (State's Ex. 23). Specifically, Lane references items located under the bed and on the countertop. (State's Ex. 23). In the second call, Lane and Forrest can be heard trying to ascertain the identity of the confidential information who "set [us] up." (*Id.*); (June 7-8, 2021 Tr. at 298-299).

**{¶27}** Here, the State presented evidence that, when viewed in a light most favorable to the State, could lead a rational trier of fact to find that Lane had constructive possession of the drugs and firearm located at 949 Leland Avenue. The State presented evidence that the drugs and firearm were found in Lane's residence, and that she was the only adult residing at the residence. Furthermore, Lane was the only adult present at the residence when law enforcement executed the search warrant.

**{¶28}** The cocaine and heroin located on the kitchen counter were in plain view and Lane referenced the drugs in a recorded jail telephone call to Forrest. Furthermore, the large quantity of cocaine located in the end table was discovered in a child's Easter basket with nail care products, which the jury could infer belonged to Lane. With respect to the firearm located in the residence, the firearm was located in close proximately to the location where the large quantity of cocaine

was found. Moreover, Lane repeatedly referenced a firearm in her text conversations and, implicitly, in her recorded telephone conversation with Forrest. This evidence, when viewed in a light most favorable to the State, could allow the jury to infer that Lane exercised dominion and control over the cocaine, heroin, and firearm.

**{¶29}** Lane's first assignment of error is overruled.

**{¶30}** With respect to Lane's fourth assignment of error, we note that Lane separately argues that the trial court erred by denying her Crim.R. 29 motion for acquittal with respect to the firearm specification and possession-of-cocaine offense. However, we "review[ ] a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim." *State v. Lightner*; 3d Dist. Hardin No. 6-08-11, 2009-Ohio-544, ¶ 11. Accordingly, through our analysis of Lane's first assignment of error, wherein we found that sufficient evidence supported all of Lane's convictions, we have effectively preempted Lane's argument that the trial court erred by denying her motion for acquittal pursuant to Crim.R. 29.

**{¶31}** Lane's fourth assignment of error is overruled.

*Manifest Weight of the Evidence*

**{¶32}** Lane separately argues that her convictions are against the manifest weight of the evidence. However, in making her manifest-weight argument, Lane

simply duplicates claims she made when challenging the sufficiency of the evidence supporting the same claims. Her claims are not proper manifest-weight arguments, and in similar circumstances, we have refused to construct, and then analyze, a manifest-weight argument on behalf of the defendant. *See State v. Laws*, 3d Dist. Allen No. 1-20-10, 2021-Ohio-166, ¶ 32 (declining to construct and then resolve a manifest-weight argument where defendant's manifest-weight argument was nothing more than a restatement of his earlier sufficiency-of-the-evidence argument).

{¶33} Nevertheless, we have little difficulty concluding that Lane's convictions are not against the manifest weight of the evidence. As discussed throughout this opinion, there is overwhelming evidence that on October 2, 2019, Lane possessed cocaine, heroin, and a firearm. While Lane claimed that she was not aware of at least some of the drugs located in her home, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's [evidence] rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Finally, the other elements of the crimes absent the element of possession are undisputed. Thus, Lane's convictions are not against the manifest weight of the evidence.

{¶34} Lane's second assignment of error is overruled.

**Assignment of Error No. III**

**The trial court erred when it failed to remove a juror, who failed to disclose a relationship with a member of Appellant's family, and when it refused to grant a mistrial on this issue.**

{¶35} Lane argues in her third assignment of error that the trial court erred by declining to remove a juror who disclosed a relationship with a member of Lane's family. Lane further argues that the trial court erred by failing to grant a mistrial on the issue. For the reasons that follow, we disagree.

{¶36} The record reflects that, following closing arguments and instructions to the jury, the jury was excused from the courtroom, but instructed to not yet begin deliberations. (June 7-8, 2021 Tr. at 560-562). Then, the trial court informed the parties that one of the jurors, Juror Four, had informed the bailiff that she recognized one of the spectators in the courtroom and believed that the spectator was Lane's relative. (*Id.* at 561-562). Due to space limitations in the courtroom, Lane's family and friends were not present during voir dire, and, accordingly, Juror Four did not observe this person until after the trial commenced. (*Id.* at 561).

{¶37} At the agreement of the parties, the trial court invited Juror Four into the courtroom for inquiry. (*Id.* at 562). In response to the trial court's inquiry, Juror Four stated that she recognized a spectator that she identified as "Sharon," and that she assumed that Sharon was a member of Lane's family. (*Id.* at 564). Sharon identified herself to the court as Lane's grandmother. (*Id.*). Juror Four stated that

Sharon was a "friend," and then Juror Four clarified that she knew Sharon from the community center where Juror Four used to work and where Sharon came to eat. (*Id.* at 564-565). Juror Four explained that the community center shut down approximately a year prior, but before that time, she saw Sharon "pretty often". (*Id.* 567-568).

{¶38} Juror Four admitted that she saw Sharon in the courtroom the previous day, but did not inform the court until the second day of the trial. (*Id.* at 567). She explained that because it was her first time serving on a jury, she did not know what to do or whether the fact that she recognized Sharon would be a problem. (*Id.*). The bailiff confirmed that Juror Four informed her earlier in the day that she recognized one of the spectators that she believed may be a member of Lane's family. (*Id.* at 569-570).

{¶39} The trial court engaged in the following dialogue with Juror Four:

[Trial court]: * * * So you think whatever you know about [Sharon] and whatever relationship you have had with her[,] you can put that aside and judge this case on the facts, the evidence that you have seen and heard the last couple of days fairly and impartially?

[Juror Four]: Yes.

(June 7-8, 2021 Tr. at 566).

{¶40} Following the trial court's inquiry, the State requested the trial court remove Juror Four from the jury and replace her with an alternate. (*Id.* at 568-569). Lane's trial counsel did not take a position on the matter and said that although he

-17-

understood the State's concerns, he would leave the issue to the trial court's discretion. (*Id.* at 569). The trial court denied the State's request and stated that Juror Four has given the trial court "no reason" to believe that she would have a problem being fair and impartial. (*Id.* at 570-571). In support of its decision, the trial court referenced Juror Four's verbal responses to the parties' inquiry as well as her body language. (*Id.* at 570).

{¶41} Then, the court adjourned for the jury to deliberate. (*Id.* at 571). Several hours later, the jury reached a verdict. (*Id.* at 571-572). Before the jury entered the courtroom to announce the verdict, the State informed the trial court that while the jury deliberated the case, the prosecutors listened to Lane's jail calls and discovered a phone call Lane made to Forrest during jury deliberations. (*Id.* at 572-575). During the phone conversation, Lane informed Forrest that one of the jurors was her stepdad's aunt and the juror had "practically raised [Lane]." (*Id.* at 572-575). In the jail call, Lane referenced that this same juror knew Lane's grandmother, Sharon, from a "soup kitchen." (*Id.* at 573). Accordingly, the State believed that Lane was referring to Juror Four. (*Id.*).

{¶42} The State then played the relevant phone call for the trial court. (*Id.* at 575). (*See* Court's Ex. AA). Thereafter, the State requested the trial court remove Juror Four, seat an alternate juror in her place, and instruct the jurors to restart

deliberations. (*Id.* at 575-576). Lane's trial counsel requested a mistrial. (*Id.* at 576-578).

**{¶43}** Then, the trial court engaged in the following conversation with Lane:

[Trial court]:      Miss Lane, is that information accurate? Did one of those jurors practically raise you?

[Lane]:               No ma'am.

[Trial court]:      Then what on earth are you referring to in that conversation? You are not under oath Miss Lane, but I would encourage you not to lie to the court. What were you referring to when you were speaking to Mr. Forrest about she practically raised me?

[Lane]:               She know [sic] my stepdad.

[Trial court]:      I'm sorry[,] what?

[Lane]:               She knows my stepdad.

[Trial court]:      She knows your stepdad?

[Lane]:               Yes, ma'am.

[Trial court]:      Is she your stepdad's aunt?

[Lane]:               I don't believe so.

[Trial court]:      Then what do you mean she practically raised you? Did she watch you when you were young?

[Lane]:               No, ma'am.

[Trial court]:      Did you go to her house?

[Lane]:               No, ma'am.

| [Trial court]: | So what did you mean by she practically raised me? |
| [Lane]: | I'm just saying, that is my stepdad. He knows her. That's all. |
| [Trial court]: | How long has your stepdad been a part of your life? |
| [Lane]: | Like five years. |

(June 7-8, 2021 Tr. at 578-580).

**{¶44}** At the agreement of the parties, Juror Four was brought into the courtroom, and the trial court engaged in the following conversation with her:

| [Trial court]: | * * * [Juror Four], a couple of things. I do not want you to tell me what the verdict is, but you all have reached verdicts on whatever was necessary, correct? |
| [Juror Four]: | Yes. |
| [Trial court]: | Okay. It has come to our attention that you might be related to Miss Lane? |
| [Juror Four]: | I don't know that. |
| [Trial court]: | Okay, it has been brought to our attention that your relationship with Miss Lane is one of an aunt or some sort of relative like that to her stepfather. What is your stepfather's name[,] Miss Lane? |
| [Lane]: | Desi. |
| [Defense counsel]: | Desi what? |

-20-

[Lane]:             Desi ---

[Juror Four]:       Oh, Desi.

[Trial court]:      Okay.

[Juror Four]:       Desmond --- is my nephew.

[Trial court]:      Alright. Okay. Desmond is your nephew?

[Juror Four]:       Yes.

[Trial court]:      Have you done anything with Miss Lane and her family?

[Juror Four]:       I don't know Miss Lane. I don't know her.

[Trial court]:      Okay.

[Juror Four]:       But I didn't know Desmond was ---

[Trial court]:      You didn't know that until this minute?

[Juror Four]:       Yea, right.

[Trial court]:      Okay. So Miss Lane's not been to your house? You all been to family functions together?

[Juror Four]:       Huh, uhm.

[Trial court]:      Not do Christmas' [sic] together and all that kind of stuff?

[Juror Four]:       No. Not that I know of * * *.

[Trial court]:      Is the only person out there that you see and seated at this table here [is] Miss Sharon that you referred to earlier? Is [Sharon] the only person that you know?

[Sharon]: She is referring to me.

[Juror Four]: Yea, yea, I know [Sharon], yea.

[Trial court]: Okay. But none of those other folks seated out there [indicating Lane's family] look familiar to you?

[Juror Four]: I don't know them. * * *

[Trial court]: Okay. Alright. Thank you very much * * *. I appreciate it.

[Juror Four]: Yea.

(June 7-8, 2021 Tr. at 580-583).

{¶45} Following the trial court's inquiry of Juror Four, the State repeated its request for the trial court to remove Juror Four, replace her with an alternate, and order the jury to begin deliberations anew. (*Id.* at 583-584). Lane's trial counsel acknowledged that Juror Four appeared to be honest in her communications and further conceded that Juror Four did not realize that she was related to Lane's stepfather until the trial court brought it to her attention. (*Id.* at 584). However, Lane's trial counsel repeated its request for a mistrial "out of an abundance of caution." (*Id.* at 585).

{¶46} After a brief recess to research the issue, the trial court denied the State's request to replace Juror Four and restart deliberations and Lane's motion for a mistrial. (*Id.* at 591). The trial court stated that when discussing the situation with Juror Four, the trial court was able to observe her, including her body language and

-22-

demeanor and, due to her observations, she believed Juror Four was being honest. (*Id.* at 590-592). Specifically, the trial court said that Juror Four "seemed completely and utterly genuine in her lack of knowledge" of her relationship to Lane's stepfather until she was informed of the connection. (*Id.* at 590). In contrast, the trial court found Lane's phone conversation with Forrest "highly suspect." (*Id.* at 589-591). The trial court also noted that if Lane was concerned about Juror Four improperly influencing the jury, particularly in a negative way toward her, she was aware of the relationship between Juror Four and her stepfather. (*Id.* at 591-592). Accordingly, if there was an error in seating Juror Four or in her participation in deliberations, Lane invited the error. (*Id.* at 592).

**{¶47}** "Crim.R. 24(G) and R.C. 2945.29 address removal of jurors during criminal trials." *State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-Ohio-2794, ¶ 45. R.C. 2945.29 provides that the trial court may discharge a juror "[i]f, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty." Similarly, Crim.R. 24(G)(1) states that alternate jurors "shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Additionally, "Crim.R. 24(G)(1) allows the court to replace a juror after deliberations have begun." *State v. Hunt*, 10th Dist. Franklin No. 12AP-103, 2013-Ohio-5326, ¶ 71. "However, '[i]f an alternate replaces a juror after deliberations have begun, the court

must instruct the jury to begin its deliberations anew.'" *Id.*, quoting Crim.R. 24(G)(1).

**{¶48}** "A trial judge is empowered to exercise 'sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform is duty is impaired.'" *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 46, quoting *State v. Hopkins*, 27 Ohio App.3d 196, 198 (11th Dist.1985); *see also State v. Taylor*, 2d Dist. Montgomery No. 28463, 2020-Ohio-3481, ¶ 18. An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

**{¶49}** "'A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected * * *.'" *State v. A.M.*, 8th Dist. Cuyahoga No. 106400, 2018-Ohio-4209, ¶ 23, quoting *State v. Reynolds*, 49 Ohio App.3d 27 (2d Dist.1988), paragraph two of the syllabus. "'Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.'" *State v. Hansen*, 3d Dist. Seneca No. 13-12-42, 2013-Ohio-1735, ¶ 58, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "In determining whether a defendant was deprived of a fair trial, we must determine whether, absent the error or irregularity, 'the jury would have found the appellant guilty beyond a reasonable doubt.'" *State*

*v. Junod*, 3d Dist. Mercer No. 10-18-08, 2019-Ohio-743, ¶ 44, quoting *State v. Morris*, 10th Dist. Franklin Nos. 18AP-208 and 18AP-209, 2018-Ohio-5252, ¶ 44, citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984). "To determine whether the error resulted in prejudice, we must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions, and (4) the strength of the evidence against the defendant." *Id.*, citing *Morris* at ¶ 44.

{¶50} "Whether to grant a mistrial is within the sound discretion of the trial court." *Hansen* at ¶ 58, citing *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 42, citing *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). Thus, we review a trial court's decision whether to grant a motion for a mistrial for an abuse of discretion. *Junod* at ¶ 43, citing *State v. Sage*, 31 Ohio St.3d 173, 182 (1987).

{¶51} Lane now argues that the trial court erred by not dismissing Juror Four or declaring a mistrial as a result of Juror Four's participation in deliberations. Lane suggests that Juror Four's conversations with the court "raised legitimate concerns about [her] candor and suitability to serve as a juror." (Appellant's Amended Brief at 6-7). We disagree.

{¶52} Although Lane now argues that the trial court failed to satisfactorily inquire on the issue, our review of the record suggests that the trial court did inquire thoroughly of Juror Four twice regarding her potential relationship to Lane's

grandmother and stepfather. Juror Four consistently stated that she did not know Lane, despite her connections to Lane's family members, and that she could be fair, impartial, and judge the case on the merits. Furthermore, the record suggests that Juror Four was forthcoming throughout the proceedings about her relationships to members of Lane's family. To wit, Juror Four approached the bailiff to inform her that she recognized a spectator in the courtroom, and she believed the spectator was a member of Lane's family. The record also indicates Juror Four was forthcoming regarding her relationship to Lane's stepfather. Upon the trial court informing her of the name of Lane's stepfather, Juror Four instantly acknowledged that she is Lane's stepfather's aunt. All of the parties present during the trial court's inquiry expressed a belief that Juror Four was candid with the court. Importantly, by all accounts, Juror Four was not aware of her relationship to Lane's stepfather until after the jury had reached a verdict and was told of the relationship by the trial court during its inquiry of her. Accordingly, Lane cannot demonstrate that Juror Four's relationship with her stepfather prejudiced Juror Four in such a way that Lane's substantial rights are adversely affected and a fair trial is no longer possible. Thus, we do not find that the trial court abused its discretion by not removing Juror Four or by denying Lane's request for a mistrial on the issue.

{¶53} Lane's third assignment of error is overruled.

**Assignment of Error No. V**

**The prosecutor engaged in affirmative misconduct during closing argument.**

{¶54} In her fifth assignment of error, Lane argues that the State engaged in affirmative misconduct during closing arguments. Specifically, Lane alleges that the prosecution engaged in misconduct by referencing the drug problem in the community during closing arguments and encouraging the jury to convict Lane in an effort to curb the local drug problem. Lane contends that the alleged improper statements made by the State amount to prosecutorial misconduct and is sufficient to warrant reversal.

{¶55} Here, Lane takes issue with several comments made by the prosecution during the State's initial closing argument. After discussing the elements of the offenses in the context of the evidence presented during the trial, the State made several comments regarding the drug problem in the community, an issue that Lane's trial counsel discussed during voir dire. Specifically, the State said:

> Ladies and gentlemen[,] yesterday during voir dire [Lane's trial counsel] asked all of the jurors that were paneled at the time of his initial voir dire if they felt that there was a drug problem within our community. The resounding answer to that question was, yes. [One juror] told us she has worked in school systems. She has seen in young children and elementary school[s] here in the Lima City Schools that drugs effect [sic] everything. It has an impact on those children. [Another juror] told us that it has been her observation within our community that the drug problem is the root of many

problems. That is something that we look at and from that can see the growing problems that result from it. Not only in our community. We heard from a juror about other communities that they have heard of or had a relative involved in where those drugs affect the community. We have it right here in Allen County. [Lane's trial counsel] followed up with asking what can be done to change that drug problem. The resounding answer was I don't know. I agree with you. I believe that your answers are representative of what our community views. There is a drug problem. What can we do about it? We don't know at this point. But there is one thing that can be done. One step in the right direction is for you as the jurors to let the community know that you care. That these illegal actions that you heard about over the last two days * * * won't be tolerated within our community. The drug sales, drug possession, drug use that affect our elementary students, effect [sic] family members, have our police officers carrying Narcan with them because of the dangers of what can happen with drugs are not going to be tolerated anymore and we ask that you send that message today.

(June 7-8, 2021 Tr. at 484-486).

{¶56} The State continued by reviewing the evidence presented during the trial. (*Id.* at 486-487). Then, the State remarked:

The Defendant was not a by-stander in this matter. She was fully engrained in drug sales within our community. Those which you have all stated you see as a problem in our community. * * * The drug problem that you all recognize[,] it is real. It is a problem. We don't have the answer or it wouldn't be a problem, but we are working towards that and would ask that you find [the] Defendant [guilty]. Through her actions, [Lane] needs to be found that she was the root of that problem. She is not the only root we have here, but she is a root of that problem as the queen of the trap house[,] looking for different types of drugs while pregnant and mothering a young child.

(*Id.* at 487-488).

-28-

**{¶57}** "A prosecutor is entitled * * * to 'wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 274, quoting *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970). "The test regarding prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the defendant." *State v. Manley*, 3d Dist. Allen No. 1-11-04, 2011-Ohio-5082, ¶ 14. "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection as made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41 (1995). "We evaluate the allegedly improper statements in the context of the entire trial." *State v. Klein*, 3d Dist. Union No. 14-12-09, 2013-Ohio-2387, ¶ 60, citing, *State v. Treesh*, 90 Ohio St.3d 460, 464 (2001), citing *State v. Keenan*, 66 Ohio St.3d 402, 410 (1993). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Cornwell*, 86 Ohio St.3d 560, 570-571 (1999), quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947 (1982).

**{¶58}** "'To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the results of the proceeding would have been different. Thus, "[n]ot every intemperate remark by

counsel can be a basis for reversal."'" *State v. Liles*, 3d Dist. Allen No. 1-14-61, 2015-Ohio-3093, ¶ 31, quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012-Ohio-1526, ¶ 20, citing *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990). If, in the context of the entire trial, "it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty, even without the improper remarks," then the trial will not be deemed unfair. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 45.

{¶59} Further, we note that, at trial, Lane did not object to the statements which she now assigns error. Accordingly, we review the prosecution's statements for plain error. *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 23. We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Under the plain error standard, the appellant must demonstrate that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise. *State v. West*, ____ Ohio St.3d ___, 2022-Ohio-1556, ¶ 35-36. *See also State v. McAlpin*, ___ Ohio St.3d

____, 2022-Ohio-1567, ¶ 90 ("McAlpin could not establish plain error, because he cannot show a reasonable probability that but for standby counsel's actions, the jury would have acquitted him.").

**{¶60}** After examining the prosecutor's statements under the four factors, we do not find that the statements constituted plain error. We note that the State, in its appellee's brief, conceded that this court would likely construe the statements at issue as improper. Indeed, "[p]rosecutors should not appeal to public sentiment in closing arguments by urging the jurors to protect society, protect community values, preserve civil order, or deter future lawbreaking." *State v. Loch*, 10th Dist. Franklin No. 02AP-1065, 2003-Ohio-4701, ¶ 67. The prosecutor's statements were improper. However, Lane has failed to demonstrate that the comments were so prejudicial as to rise to the level of plain error. Rather, Lane baldly argues that the statements were intended to "unfairly scare and inflame the jurors * * * by appealing to their general fear of crime." (Appellant's Amended Brief at 9). Lane's vague argument fails to demonstrate how the prosecution's statements affected her substantial rights or that, but for the statements, the jury would have found Lane not guilty. Rather, when examined in the context of the entire trial, it appears clear that the jury would have found Lane guilty, even without the improper remarks. *Tenace*, 2006-Ohio-2417, at ¶ 45. As detailed in our discussion of Lane's first, second, and fourth assignments of error, absent the prosecutor's statements, the State provided

plentiful evidence from which the jury could find Lane guilty as charged in the indictment. *See Barnes* at 27.

**{¶61}** Lane's fifth assignment of error is overruled.

## Assignment of Error No. VI

**The trial court erred when it gave improper jury complicity instructions requested by the State.**

**{¶62}** In her sixth assignment of error, Lane argues that the trial court erred by including a complicity jury instruction as requested by the State. Lane alleges that the State presented no evidence demonstrating that she aided and abetted Forrest in the crimes for which she was convicted. Accordingly, Lane contends that the trial court erred by including a jury instruction for complicity.

**{¶63}** "Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder." *State v. Shine-Johnson*, 10th Dist. Franklin No. 17AP-194, 2018-Ohio-3347, ¶ 25. "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240. Yet, a trial court may refuse to issue a requested jury instruction if "'the evidence adduced at trial is legally insufficient' to support it.'" *State v. Juntunen*, 10th Dist. Franklin Nos. 09AP-1108 and 09AP-1109, 2010-Ohio-5625, ¶ 13, quoting *State v. Barnd*, 85 Ohio App.3d

254, 259 (3d Dist.1993). "[T]he trial judge is in the best position to gauge the evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, ¶ 72. Accordingly, we review a trial court's decision to include a requested jury instruction under an abuse of discretion standard. *See Juntunen* at ¶ 13.

{¶64} It is well established that the prosecution "'may charge and try an aider and abettor as a principal[,] and if the evidence at trial reasonably indicates that the defendant was an aider and abettor rather than a principal offender, a jury instruction regarding complicity may be given.'" *State v. Sidders*, 3d Dist. Union No. 14-08-24, 2009-Ohio-409, ¶ 37, quoting *State v. Demecs*, 6th Dist. Fulton No. F-5-021, 2006-Ohio-3802, ¶ 18. "In general, the rule regarding appellate review of jury instructions is that a sole instruction must be viewed within context of the whole set rather than in isolation." *State v. Moore*, 3d Dist. Putnam No. 12-06-18, 2007-Ohio-5905, ¶ 26.

{¶65} R.C. 2923.03 defines complicity and provides, in pertinent part:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of R.C. 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

* * *

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

**{¶66}** As detailed in our discussion of Lane's first, second, and fourth assignments of error, the State introduced sufficient evidence that Lane was complicit in the possession of drugs, i.e. that she aided and abetted Forrest in the possession of drugs. Specifically, the State proffered text messages and telephone calls between Lane and Forrest which indicate that Lane had knowledge that Forrest was selling drugs out of her home and that she was not only knowledgeable of Forrest's actions, but that she helped to further his actions by providing a location from which Forrest could sell drugs, selling Forrest's drugs in his absence, and soliciting the help of her friends to further Forrest's actions. Accordingly, the State's requested complicity jury instruction was appropriate, and the trial court did not err by overruling Lane's objection to the same.

**{¶67}** Lane's sixth assignment of error is overruled.

**Assignment of Error No. VII**

**The State breached a plea agreement by withdrawing its plea offer, after that offer had already been accepted by appellant, resulting in unfair prejudice to Appellant.**

{¶68} In her seventh assignment of error, Lane argues that the State breached a plea agreement by withdrawing from the agreement after it had been agreed upon by the parties but before the plea offer was finalized by the trial court.

{¶69} The record indicates that in the week prior to trial, Lane's trial counsel and the State continued to negotiate possible plea agreements. (June 3, 2022 Tr. at 6-7). At some point, the State and Lane reached an agreement that Lane would enter a change of plea and enter a guilty plea to Counts One and Two. (*Id.* at 7-8). In exchange, the State would recommend dismissal of the gun specifications and recommend the mandatory minimum sentence. (*Id.*). Lane informed the trial court of the agreement. (*Id.* at 6). However, later that same day, the State called Lane's trial counsel and withdrew from the agreement. (*Id.* at 6-12).

{¶70} Lane argues that the agreement between her and the State constituted a binding agreement, and that the State breached a plea agreement by withdrawing the plea offer.

{¶71} "Plea agreements are essentially contracts between the state and a criminal defendant that must be accepted by the trial court before becoming effective. As such, they are governed by ordinary contract principles." *State v.*

*Padilla*, 8th Dist. Cuyahoga No. 98187, 2012-Ohio-5892, ¶ 9, citing *Puckett v. United States*, 556 U.S. 129, 137, 129 S.Ct. 1423 (2009). "As with many other contracts, a writing is not required to be enforceable, but a trial court may only accept a plea made in open court." *Id.*, citing Crim.R. 11(F). "Therefore, implicit in every plea agreement is a method of acceptance." *Id.*

**{¶72}** "'When an allegation is made that a plea agreement has been broken, the defendant must merely show that the agreement was not fulfilled.'" *State v. Collier*, 8th Dist. Cuyahoga No. 108687, 2020-Ohio-3033, ¶ 10, quoting *State v. Legree*, 61 Ohio App.3d 568 (6th Dist. 1988). "In the event of a breach, the trial court may allow the defendant to withdraw his or her plea, or it may order specific performance of the plea agreement, in which the case the defendant shall be resentenced by a different judge." *Id.*

**{¶73}** However, here, the State rescinded the offer before the agreement was accepted by the trial court. Accordingly, although it may have been poor form for the State to withdraw the plea agreement after it was verbally accepted, we do not find that the State breached an enforceable plea agreement. *Padilla* at ¶ 9; Crim.R. 11(F).

**{¶74}** Lane's seventh assignment of error is overruled.

**Assignment of Error No. VIII**

**Appellant's trial counsel provided ineffective assistance, which resulted in a conviction on both counts, and the firearm**

-36-

**specifications, and deprived appellant of substantive and procedural due process of law.**

{¶75} In her eighth assignment of error, Lane argues that she received ineffective assistance of trial counsel. Lane claims her trial counsel was ineffective for failing to communicate a plea deal, waiving an opening statement, and not objecting to the introduction of a series of text messages and telephone conversations.

{¶76} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St. 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute

ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991).

Rather, the errors complained of must amount to a substantial violation of counsel's

essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142

(1989).

{¶77} Prejudice results when "'there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability

is a probability sufficient to undermine confidence in the outcome.'" *Id.,* quoting

*Strickland* at 694.

{¶78} First, Lane argues that her trial counsel failed to timely communicate

a plea offer. Specifically, Lane argues that her trial counsel failed to communicate

a plea offer to her that expired on May 17, 2021. However, Lane's argument is

refuted by the record. Specifically, prior to the commencement of trial, the parties

detailed the timeline of the plea negotiations. During this dialogue, Lane and her

trial counsel both confirmed that Lane was informed of the plea offer prior to its

expiration. (June 7-8, 2021 Tr. at 6-12). Furthermore, the record indicates that, up

until several days before the commencement of trial, Lane expressed that she was

unwilling to entertain a plea deal that involved any amount of mandatory jail time,

which the plea expiring on May 17, 2021 required. Additionally, the record

indicates that the parties continued to negotiate potential plea offers after the plea

deal at issue expired. Accordingly, we do not find Lane's argument that her trial counsel was ineffective for failing to disclose a plea offer to be well taken.

**{¶79}** Second, Lane argues that her trial counsel was ineffective for waiving an opening statement. Lane contends that her trial counsel's decision to waive an opening statement "risks jurors adopting the opponent's view of the case at the outset of trial" and "contributed to [Lane's] conviction in this case." (Appellant's Amended Brief at 12). We disagree. "It is widely established that the decision to make an opening or closing statement is considered a tactical decision or trial strategy, which does not rise to the level of ineffective assistance." *State v. Lawrence*, 3d Dist. Putnam No. 12-15-11, 2016-Ohio-2768, ¶ 37. In any event, Lane has failed to articulate precisely how she was prejudiced by her trial counsel's decision not to give an opening statement. Bare claims of prejudice, like those offered by Lane in her appellant's brief, are not enough to carry her burden on the issue of prejudice. *State v. Williams*, 1st Dist. Hamilton No. C-180588, 2020-Ohio-1368, ¶ 22.

**{¶80}** Next, Lane argues that her trial counsel was ineffective for failing to object to a series of text messages from her phone, which suggested Lane was involved in prior drug-trafficking activities. Lane argues that the text messages were not relevant to the charges at hand pursuant to Evid.R. 402. Lane further contends that the even if the text messages were relevant, their probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A). Lane contends that prejudice she suffered as a result of the admission of the text messages resulted in her convictions. We disagree.

**{¶81}** Although evidence of other criminal acts of a defendant, different from those for which the defendant is on trial is not generally admissible for the purpose of showing the defendant's character or propensity to commit crime, such evidence may be "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404. However, "[a]n attorney's decision as to whether or not to object at certain times during trial is presumptively considered a trial tactic or strategy that we will not disturb." *State v. Blair*, 4th Dist. Washington No. 14CA33, 2016-Ohio-2872, ¶ 108. Here, the text messages reflected Lane's knowledge of the prior drug activity at her house. However, the text messages also established Forrest's knowledge of and involvement in prior drug activity at Lane's house and could bolster Lane's assertion that the drugs found at her house on October 2, 2019 belonged to Forrest. Accordingly, Lane's trial counsel could have had a tactical or strategic reason for not objecting to the state's introduction of the text messages. *State v. Mayse*, 3d Dist. Marion No. 9-16-50, 2017-Ohio-1483, ¶ 29-30.

**{¶82}** Lane's eighth assignment of error is overruled.

## Assignment of Error No. IX

**The trial court erred when it imposed an aggregate prison term of seven to ten years, which is not supported by the record.**

{¶83} In his ninth assignment of error, Lane claims her sentence is not supported by the record. Lane argues that the trial court failed to consider several factors under R.C. 2929.12 which indicate she is unlikely to commit future crimes. Specifically, Lane argues the trial court failed to consider R.C. 2929.12(C)(3), which relates to whether the offender caused or expected to cause physical harm to persons or property, and R.C. 2929.12(C)(4), which concerns situations where substantial grounds to mitigate the offender's conduct are present, but which are not sufficient to constitute an affirmative defense.

{¶84} Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶85} "'Trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶

9, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. A sentence imposed within the statutory range is not contrary to law as long as the trial court considered the purposes and principles of felony sentencing contained in R.C. 2929.11 and the sentencing factors contained in R.C. 2929.12. *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 15.

{¶86} Recently, in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, the Supreme Court of Ohio clarified the proper scope of review of felony sentences imposed in cases, like the present case, where the defendant's appeal challenged the trial court's application of R.C. 2929.11 and 2929.12. In *Jones*, the court held that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. In reaching this conclusion, the court explained that R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if the appellate court clearly and convincingly finds that the record does not support the sentencing court's finding under certain specified statutory provisions. *Id.* at ¶ 28. However, R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a). *Id.* Instead, only "R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified" in R.C. 2953.08(G)(2)(a). *Id.* Furthermore, the court explained that "an appellate

-42-

court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Accordingly, "pursuant to *Jones*, an appellate court errs if it * * * modifies or vacates a sentence 'based on lack of support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12.'" *Dorsey*, 2021-Ohio-76, at ¶ 17, quoting *Jones* at ¶ 29.

{¶87} As a fourth-degree felony, possession of heroin in violation of R.C. 2925.11(A), (C)(6)(b) carries a sanction of 6 to 18 months' imprisonment. R.C. 2925.11(A), (C)(6)(b); R.C. 2919.14(A)(4). As a first degree felony, possession of heroin in violation of R.C. 2925.11(A), (C)(4)(e) carries a stated minimum term of 3 to 11 years. R.C. 2925.11(A), (C)(4)(e); R.C. 2929.14(A)(1)(a). The firearm specification carried a one-year mandatory prison term. R.C. 2941.141. Because (1) Lane was sentenced on more than one felony, (2) possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e) is a qualifying felony of the first degree, and (3) the court ordered the prison terms for Count One and Two to run concurrently, Lane's maximum sentence, not including the firearm specifications, is the sum of the longest minimum term imposed plus fifty percent of the minimum term for Count One. R.C. 2929.144(B)(3).

{¶88} The trial court sentenced Lane to a minimum stated term of 6 years' imprisonment for the first-degree felony possession of cocaine and a definite

sentence of 12 months' imprisonment for fourth-degree felony possession of heroin. Thus, the trial court sentenced Lane to a minimum term of 6 years' imprisonment to a maximum term of 9 years' imprisonment plus an additional 1 year in prison for the firearm specification. Accordingly, each of Lane's individual sentences are within the corresponding statutory ranges.

{¶89} Furthermore, the record affirmatively reflects that the trial court considered R.C. 2929.11 and 2929.12 when it sentenced Lane. In the judgment entry of sentence, the trial court stated that it fashioned Lane's sentence it considered "the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation, and restitution." (Doc. No. 141). The trial court further stated that it "is guided by the overriding purposes of felony sentencing, including the protection of the public from future crime by the offender and others and punishment of the offender, using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." (*Id.*). Furthermore, at the sentencing hearing, the trial court engaged in a lengthy analysis of Lane's conduct in light of the purposes of felony sentencing under R.C. 2929.11 and balanced R.C. 2929.12's seriousness and recidivism factors. (July 21, 2021 Tr. at 31-41). "A trial court's statement that it considered the required statutory factors,

without more, is sufficient to fulfill its obligations under the sentencing statutes."
*State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 32. Therefore, because Lane's sentence is within the statutory range and the record supports that the trial court fulfilled its obligation of considering R.C. 2929.11 and 2929.12, Lane's sentence is not contrary to law. *Dorsey*, 2021-Ohio-76, at ¶ 18-19; *Maggette* at ¶ 30, 36.

**{¶90}** Nevertheless, Lane argues that the trial court erred by failing to consider several factors indicating that Lane was unlikely to commit future crimes. First, Lane argues that the trial court erred by failing to consider that in committing the offense, she did not expect to cause physical harm to persons or property. Second, Lane alleges that the trial court erred by failing to consider that there are substantial grounds to mitigate her conduct, even if those grounds do not constitute a defense. Specifically, Lane argues that "Forrest essentially intimidated and used [Lane] and her home for his own criminal purposes." (Appellant's Amended Brief at 14). However, in light of the Supreme Court of Ohio's holding in *Jones*, we could not vacate or modify Lane's sentence on that basis. *See State v. Denoyer*, 3d Dist. Allen No. 1-20-34, 2021-Ohio-886, ¶ 29 (finding that, pursuant to *Jones*, R.C. 2953.08(G)(2)(b) "does not provide a mechanism for an appellate court to modify or vacate a felony sentence based upon a finding that the sentence is 'contrary to

law' because it clearly and convincingly is not supported by the record under R.C. 2929.11 and R.C. 2929.12").

**{¶91}** Further, notwithstanding *Jones*, the record belies Lane's arguments. Although Lane claims the trial court failed to consider that Lane did not anticipate causing physical harm to any persons or property through her actions, the record indicates that the trial court engaged in an extended analysis of this factor. Additionally, Lane argues the trial court erred by failing to consider that Forrest's involvement in the case and relationship with Lane served as mitigation pursuant to R.C. 2929.12(C)(4). Yet, our review of the record indicates that the trial court considered Forrest's alleged involvement and possible influence over Lane when fashioning her sentence. (July 21, 2021 Tr. at 37-41). To the extent that Lane is attempting to argue that the trial court did not assign the proper weight to the factors at issue, her argument precluded by *Jones*. *Jones*, 2020-Ohio-6729, ¶ 42 ("Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.").

**{¶92}** Lane's ninth assignment of error is overruled.

**{¶93}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/jlr**